**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard Virgil BURNS,
Defendant-Appellant.**

No. 74–3022.

United States Court of Appeals,
Ninth Circuit.

Dec. 22, 1975.

R. M. Whittier (argued), Pocatello, Idaho, for defendant-appellant.

Dan E. Dennis, Asst. U. S. Atty. (argued), Boise, Idaho, for plaintiff-appellee.

OPINION

Before DUNIWAY and GOODWIN, Circuit Judges, and THOMPSON, District Judge.*

GORDON THOMPSON, Jr., District Judge:

Burns is an Indian employed by the Shoshone-Bannock Tribe of Indians, Fort Hall Indian Reservation, Idaho, as a temporary tribal game warden. He was convicted under separate counts charging unlawful possession of a firearm by a felon in violation of 18 U.S.C. App. § 1202(a) and assault with a dangerous and deadly weapon in violation of 18 U.S.C. § 1153, and Idaho 18–906. We affirm.

I. Statement of Facts

With respect to the first count, the evidence shows that Burns, a convicted felon, was arrested with a Colt .45 automatic pistol in his possession, which was manufactured in Hartford, Connecticut. The gun was shipped to Boise, Idaho in October, 1972 and sold to the appellant's wife, in his presence, on August 28, 1973.

On October 7, 1973, a party of non-Indians had trespassed onto the Fort Hall Indian Reservation, Idaho for the purpose of crossing over onto public land. The party consisted of three vehicles and eleven persons, including men, women and children. They had no firearms in their possession.

Burns and another tribal game warden stopped the rear vehicle, demanded to see the driver's license of the driver and refused to allow the driver to proceed and leave the area by a different route. The two tribal wardens then proceeded after the second vehicle driven by Cyril Lempke, in which his wife and son, Chris Lempke, were passengers. The appellant Burns, without identifying himself, demanded to know what the party was doing on the road and ordered them off the reservation. The Lempkes protested denial of the right to use the road after which an argument ensued. Burns made a statement to the effect that he would put a stop to the nonsense, pulled his pistol from its holster and pointed it directly at Chris Lempke. Cyril Lempke intervened, and the gun was put away.

II. Jurisdiction

Appellant contends that the trial court had no jurisdiction to try an alleged violation of 18 U.S.C. App. § 1202(a), where committed by an Indian on an Indian reservation. Indian tribes are recognized as quasi-sovereign entities with the power to regulate their own affairs, save to the extent to which Congress has modified or abrogated that power by treaty or statute. *Ex parte Crow Dog,* 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883); *Iron Crow v. Oglala Sioux Tribe of Pine Ridge Reservation,* 231 F.2d 89 (8th Cir. 1956). He argues that by treaty and tribal law, the task of preventing trespass by unauthorized persons upon the reservation was in the hands of the tribal council. The council could select whomever it wished as game wardens to carry out the rules and regulations adopted on the reservation.

In support of this contention appellant cites 18 U.S.C. §§ 1152 and 1153.[1] By legislation, Congress has indicated in § 1153 that only ten (10) major crimes are to apply to Indians. "Possession of a

---

* Honorable Gordon Thompson, Jr., Southern District of California, sitting by designation.

1. 18 U.S.C. § 1152 reads in part as follows:

    Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, . . ., shall extend to the Indian country.

    This section shall not extend to offenses committed . . ., or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

    18 U.S.C. § 1153 reads in part as follows:

    Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, . . assault with a dangerous weapon, . . ., shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States. . . . .

firearm by a convicted felon" is not one of them. Burns argues also that § 1152 indicates the general laws of the United States will not apply to any Indian committing any offense in the Indian country "where, by treaty stipulation, the exclusive jurisdiction over such offenses is secured to the Indian tribes."

Appellant misreads §§ 1152 and 1153. A similar argument was made and rejected in *Walks on Top v. United States,* 372 F.2d 422 (9th Cir. 1967), *cert. denied* 389 U.S. 879, 88 S.Ct. 109, 19 L.Ed.2d 170 (1967); *accord, Stone v. United States,* 506 F.2d 561 (8th Cir. 1974). The second paragraph of § 1152 lists exceptions only from federal enclave laws and not from the general laws of the United States. The first paragraph declares, "[e]xcept as otherwise provided by law, the general laws of the United States as to the punishment of offenses committed in any place *within the sole and exclusive jurisdiction of the United States .  .  shall extend to the Indian country."* § 1153 is in the same vein. Any Indian who commits one of the ten (10) major crimes against another Indian or other person within the Indian country "shall be subject to the same laws and penalties as all other persons committing any of the above offenses, *within the exclusive jurisdiction of the United States",* i. e., federal enclaves.

■■ We agree with the recent case of *United States v. Three Winchester 30–30 Caliber Lever Action Carbines, etc.,* 504 F.2d 1288 (7th Cir. 1974),[2] where the court held that 18 U.S.C. App. § 1202(a) did apply to Indians on Indian reservations. Section 1202(a) is included in the *federal statutes of general applicability that make actions criminal wherever committed.* Such laws are applicable to the Indian unless there exists some treaty right which exempts the In-

dian from the operation of the particular statutes in question. *F.P.C. v. Tuscarora Indian Nation,* 362 U.S. 99, 116, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960). An examination of the Fort Bridger Treaty, July 3, 1868, 15 Stat. 673, discloses no language purporting to exempt Indians from the laws of general applicability throughout the United States regardless of situs of the act, and the defendant points to none.

■ The government does not infringe upon the right of the Shoshone-Bannock Tribal council to appoint game wardens and to authorize them to carry firearms. Burns is merely precluded from possessing a firearm because of his previous felony conviction.

Burns relies strongly on *Keeble v. United States,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), where the court recognized that § 1153 "represents a carefully limited intrusion of federal power into the otherwise exclusive jurisdiction of the Indian tribes to punish Indians for crimes committed on Indian land" and that the government is not permitted "to infringe the residual jurisdiction of a tribe by bringing prosecutions in federal court that are not authorized by statute." *Id.* at 209, 214, 93 S.Ct. at 1996.

■ *Keeble* is distinguishable. The Supreme Court was merely recognizing the jurisdictional rights of Indian tribes. Just as state law is not to apply on Indian lands, unless expressly authorized by federal statute, so also, federal enclave law is not to apply unless expressly authorized. However, here we deal not with federal enclave law, but with a general law of the United States that makes an action criminal wherever committed.

2. Defendant attempts to distinguish *Three Winchesters* by arguing that the case is from the State of Wisconsin, and by the provisions of 18 *U.S.C.* § 1162 jurisdiction over offenses within Indian country has been delegated to the State of Wisconsin, and thus §§ 1152 and 1153 are no longer applicable. This is true.

§ 1162 says that the state may apply its laws to Indians on Indian lands as it can to the rest of its citizens, i. e., state law is to apply instead of federal enclave law. However, this section does not eliminate federal jurisdiction over persons committing crimes in violations of the federal statutes of general applicability.

### III. Interstate Commerce Nexus

■ 18 U.S.C. App. § 1202(a) applies to any person who has been convicted of a felony and "who receives, possesses or transports in commerce or affecting commerce . . . any firearm . . . ." Appellant next contends there was insufficient evidence to show a nexus or connection between the defendant's possession of the gun and interstate commerce as required in *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). He argues that because the gun had been out of interstate commerce for approximately eleven (11) months, it can not be said that possession of the gun "affected" interstate commerce. This same argument was rejected by this court in *United States v. Giannoni,* 472 F.2d 136 (9th Cir. 1973), where the gun had been out of interstate commerce for 13 years. We need not consider the matter further.

### IV. Unreasonable Use of Force

■ With respect to the second count, Burns argues that he was acting in the performance of his official duties as a tribal game warden, and that the pointing of the pistol was reasonably necessary in the performance of his duties. While there appears to be some disagreement in the testimony as to the events leading up to the incident, it was within the district judge's discretion, as trier of fact, to weigh the credibility of the witnesses. The District Court found there was sufficient evidence to indicate the weapon was loaded, making it a deadly weapon, and that the pointing of the gun and threatening to shoot Chris Lempke "went considerably beyond the force which was necessary to carry out his duty and obligation as a police officer." We agree.

### V. Similar Prior Acts or Conduct

Lastly, appellant asserts that it was error to admit into evidence certain prior acts or conduct. The government sought to prove that the defendant's conduct was not simply an isolated instance of overreaction by an officer, but rather was consistent with a pattern of conduct employed by the defendant in the past. Evidence was offered tending to show that the defendant had either expressly or impliedly threatened to use a firearm or actually pointed a firearm at persons trespassing on the reservation.

■ The rule is well established in this Circuit that evidence of other acts or conduct of a like or similar nature will not be admitted to prove the character of a person in order to show that he acted in conformity therewith. However, such evidence, if sufficiently similar, is admitted for other purposes such as proof of motive, opportunity, intent, plan, scheme, knowledge, *modus operandi,* or absence of mistake or accident. *United States v. Castro,* 476 F.2d 750, 753 (9th Cir. 1973); *United States v. Nunez,* 483 F.2d 453 (9th Cir. 1973), *cert. denied,* 414 U.S. 1076, 94 S.Ct. 594, 38 L.Ed.2d 483 (1973).

■ From our review and consideration of the record as a whole, we conclude that the prior acts and conduct are sufficiently similar to the incident in question and were properly admitted by the trial judge as bearing on Burn's intent and state of mind.

The judgment of conviction is affirmed.