THOMAS KIDDIE, M.D., INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7108–76.     Filed March 30, 1978.

*William A. Seligmann,* for the petitioner.
*John O. Kent,* for the respondent.

STERRETT, *Judge:* Respondent, on April 30, 1976, issued a statutory notice of deficiency in which he determined the following deficiencies in petitioner's Federal corporate income taxes:

| Taxable year | Deficiency |
| --- | --- |
| 1971 | $7,962.31 |
| 1972 | 16,972.52 |
| 1973 | 4,613.50 |

Due to concessions made by the parties the sole issue

remaining for our determination is whether petitioner's 1972 and 1973 contributions to its pension plan are deductible.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioner Thomas Kiddie, M.D., Inc., is a professional medical corporation which was incorporated in California on November 26, 1971. Petitioner commenced medical practice as a corporation on December 17, 1971. Initially, and at all times relevant herein, Thomas Kiddie, M.D. (hereinafter Kiddie), was the sole shareholder, sole director, president, and treasurer of petitioner. Mary F. Kiddie, wife of Thomas Kiddie, was at all relevant times vice president and secretary thereof. Prior to incorporation Kiddie practiced medicine in his individual capacity.

Petitioner's corporate income tax returns for the taxable years 1972 and 1973 were timely filed with the Internal Revenue Service Center, Fresno, Calif. Petitioner's tax year was the calendar year. Its place of business was located in Long Beach, Calif., at the time of filing the petition herein.

William C. Smith, M.D. (hereinafter Smith), was hired by Kiddie as a clinical pathologist on August 25, 1969. Smith incorporated in California on September 17, 1971, as William C. Smith, M.D., Inc. (hereinafter Smith, Inc.). Petitioner and Smith, Inc., joined forces on August 25, 1972, to form the Thomas Kiddie, M.D., Inc., and William C. Smith, M.D., Inc., partnership (hereinafter Partnership). Each corporation has at all times owned a 50-percent interest in the partnership.

Kiddie established a pathological laboratory unit (hereinafter Unit) at St. Mary's Hospital (hereinafter Hospital) in July of 1951. Kiddie was the owner of Unit. The contractual agreement between Kiddie and Hospital, which set forth the details of their relationship, was terminated on December 17, 1971. In its stead, an agreement between petitioner and Hospital was executed. Such contract, in turn, was terminated November 30, 1972. That contract was replaced by a contract between Partnership and Hospital executed on December 1, 1972.

To fulfill the terms of the contract with Hospital, Kiddie, in his various relevant capacities, obtained the services of Herbert O. Carne (hereinafter Carne), a biochemist, in 1956; Kenneth M.

Brown, M.D. (hereinafter Brown), a pathologist, in 1958; Carl J. Schneider, Jr. (hereinafter Schneider), an immuno-serologist, in 1966; and Ernest T. Mashiyama, M.D. (hereinafter Mashiyama), a pathologist, in 1971.

Petitioner signed a flat benefit pension plan and employees' retirement trust on December 1, 1972 (hereinafter Plan). The effective date of the Plan was January 1, 1972. Respondent determined Carne, Brown, Schneider, and Mashiyama to be employees of petitioner, who have been improperly excluded from the Plan causing its disqualification for the taxable years 1972 and 1973, resulting in the disallowance of a deduction for petitioner's contribution to the Plan for those years.

## OPINION

Section 404(a)(1) provides, in general, that contributions to a qualified pension trust are deductible in the year paid. Respondent has determined that petitioner's Plan is not qualified because four of its employees were excluded from participation therein.

Petitioner initially contends that all four of the individuals in question should not be characterized as employees but as independent contractors. After an extensive review of the cases which have considered this distinction we must reject petitioner's premise.

Whether an individual is an employee or independent contractor is determined by the application of the common law concepts defining those terms. *Packard v. Commissioner*, 63 T.C. 621, 628 (1975). The legal issue of the character of the worker is determined by considering the total factual situation. *Alsco Storm Windows, Inc. v. United States*, 311 F.2d 341, 343 (9th Cir. 1962). The majority of cases which discuss this distinction enumerate seven factors:

Among the relevant factors to which the courts have looked in determining the substance of the employment relationship are the following: (1) The degree of control exercised by the principal over the details of the work, (2) which party invests in the facilities used in the work, (3) the opportunity of the individual for profit or loss, (4) whether or not the principal has the right to discharge the individual, (5) whether the work is part of the principal's regular business, (6) the permanency of the relationship, and (7) the relationship the parties believe they are creating. [*Simpson v. Commissioner*, 64 T.C. 974, 984–985 (1975).]

The following additional factors have also been considered:

(1) The manner of payment, by the job or by the hour.

(2) Skill required.

(3) The offering of services to the general public rather than to one individual.

(4) Distinct occupation or recognized trade or calling involved.

(5) Custom in the trade.

*Bonney Motor Express, Inc. v. United States,* 206 F. Supp. 22, 26 (E.D. Va. 1962).

Petitioner hinges its argument on the degree of control exercised by the principal; the investment in the tools used; the offering of services to the general public rather than to one individual; the intent and belief of the parties; and the occupation and skill involved. It claims the remaining factors are not determinative when the factual situation encompasses an independent contractor involved in the performance of services.

Regardless of the latter claim, petitioner's argument is weak. Although the four individuals were given control over the manner in which they accomplished the required results, the test is whether the principal has the right to control these details not whether he actually asserts that right. *Packard v. Commissioner, supra* at 629. When professionals are involved, the techniques and standards of their profession naturally cause an employer's control to be more general. *James v. Commissioner,* 25 T.C. 1296, 1301 (1956). The factual situation before us parallels that in *James.* We find that the principal had the right to control more than results.

A significant portion of the equipment used by these individuals was supplied by Hospital. Because the principal rather than the individuals had contracted with Hospital with respect to such equipment, the principal should be considered to have supplied the necessary equipment as between the principal and the individuals. In addition, we question whether the libraries supplied by the individuals were any different from the libraries that others in their respective professions maintain regardless of their characterization as independent contractors or employees. We fail to see how these individuals could be portrayed as offering their services to the general public. They provided their services to Hospital, not to individual patients. They received semimonthly salaries that were not based on patients seen. Although Kiddie obviously intended that these

individuals be independent contractors for tax purposes, this factor cannot, alone, be determinative. Neither do we find the occupation or skill involved determinative. *James v. Commissioner, supra.* The remaining factors uniformly point to employee status. We find the four individuals to be employees.

For the taxable years here involved section 401(a)(3)[1] provided that a plan must not discriminate in favor of employees who are officers, shareholders, supervisors, or highly compensated.

Petitioner contends that, even if these individuals are found to be employees rather than independent contractors, the prohibited discrimination does not exist because these individuals each fit within at least one of the above categories, i.e., highly compensated.[2] We find petitioner's argument novel, even ingenious, but it overlooks the use of the conjunctive "or." Petitioner's Plan, in operation, benefited only its sole shareholder. Because "or" conjoined the categories it is immaterial that the non-shareholder employees may be otherwise categorized as members of the prohibited group.[3] Therefore, the Plan fails to be qualified during the period that these individuals were employed by petitioner.

Petitioner maintains that, if we find these individuals to have been its employees, they were only employed thereby up to the time that the Partnership assumed the operation of the Unit. Although the testimony is inconclusive on this point because

---

[1] As in effect for the taxable years 1972 and 1973:

SEC. 401(a). REQUIREMENTS FOR QUALIFICATION.—A trust created or organized in the United States and forming part of a * * * pension * * * plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section—

> *     *     *     *     *     *     *

(3) if the trust * * * benefits either—

(A) 70 percent of more of all the employees, or 80 percent or more of all the employees who are eligible to benefit under the plan if 70 percent or more of all the employees are eligible to benefit under the plan, excluding in each case employees who have been employed not more than a minimum period prescribed by the plan, not exceeding 5 years, employees whose customary employment is for not more than 20 hours in any one week, and employees whose customary employment is for not more than 5 months in any calendar year, or

(B) such employees as qualify under a classification set up by the employer and found by the Secretary or his delegate not to be discriminatory in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees * * *

[2] Petitioner also contends that Schneider was merely a part-time employee and could, therefore, properly be excluded from plan participation. Because of our determination with respect to the other issues we find no need to discuss this point.

[3] We do not mean to imply acceptance of petitioner's argument on the highly compensated contention.

Kiddie tended to refer to himself, when alluding to himself, to Kiddie, Inc., and to the Partnership, as do the fact sheets on the four individuals; careful analysis reveals that they were employed by petitioner up to the time, November 30, 1972, that petitioner and Hospital terminated their agreement. Petitioner had employed them to assist in fulfilling its obligation under the Hospital contract. Petitioner compensated them for their work and was responsible therefor to Hospital.

On December 1, 1972, Hospital contracted with Partnership. Pursuant to the supersession by the Partnership, the employees of petitioner became employees of Partnership. Though Kiddie remained the predominant administrator, he acted for the Partnership. It was the Partnership that provided remuneration for the employees' services and operated the pathology unit.

Respondent counters that the identity of the employer is immaterial because the employees of Partnership are considered petitioner's employees for section 401 purposes. We cannot agree.

Generally, attribution of partnership characteristics to a partner does not occur unless that partner controls the partnership. Although there is no universal definition, section 707(b) of subchapter K defines such control for two purposes. Thus, a partner owning more than a 50-percent interest may not recognize a loss which arose in dealings between such partner and the partnership; and gains realized in such dealings are treated as ordinary income[4] if that partner owns more than an 80-percent interest in the partnership.

These same percentage criteria are statutorily incorporated into the definition of control when dealing with section 179 additional depreciation allowances and section 38 investment credits. *Moradian v. Commissioner*, 53 T.C. 207, 209 (1969). In addition, section 707(b) has been used to elucidate the definition of section 1235(d) related persons when partnerships were involved. *Burde v. Commissioner*, 352 F.2d 995, 1000 (2d Cir. 1965). We find the greater than 50-percent interest test, when such interest is determined with reference to section 267(b) and (c), to be equally applicable in defining control of a partnership for purposes of section 401(a)(3).

---

[4] When property other than sec. 1221 property is involved.

Herein petitioner never owned more than a 50-percent interest in Partnership. Because petitioner did not have a controlling interest we will not attribute Partnership's employees to petitioner.

We find Carne, Brown, Schneider, and Mashiyama to have been employees of petitioner for purposes of section 401(a)(3) through November 30, 1972. As of December 1, 1972, they became employees of Partnership.

The Plan provides that:

> 2.01 - Eligibility—Every Employee shall become a Participant under this Plan as of the Effective Date or Anniversary Date on which he first meets all of the requirements for eligibility set forth in the Specifications.

> \* \* \* \* \* \* \*

> 3. - ELIGIBILITY REQUIREMENTS—Sec. 2.01.
>    (a) JOB CLASSIFICATIONS
>        All Employees
>    (b) SERVICE
>        All Employees employed on the Anniversary Date. All future Employees employed on any Anniversary Date.
>    (c) AGE LIMITS.
>        None

The effective date of the Plan was January 1, 1972. The anniversary date is December 31 of each year. All four individuals were hired prior to the effective date. However, none were petitioner's employees on either December 31, 1972, or December 31, 1973. They did not meet the criteria for participation in the Plan because they were not employees on the relevant date. They were, therefore, properly excluded pursuant to the provisions of the Plan.

Respondent concedes that the Plan, by its terms, is a qualified plan.

*Decision will be entered under Rule 155.*